IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 17-40195-KW |
| | ) | |
| MOUNT CALVARY PENTECOSTAL | ) | Chapter 11 |
| CHURCH OF YOUNGSTOWN, OHIO | ) | |
| | ) | |
| Debtor/Debtor-in-Possession | ) | Judge Kay Woods |

## FIRST AMENDED PLAN OF REORGANIZATION OF THE DEBTOR AND DEBTOR-IN-POSSESSION

Mount Calvary Pentecostal Church of Youngstown, Ohio, the above-captioned Debtor and Debtor-in-Possession, (the "Debtor"), proposes the following plan of reorganization (the "Plan"). All creditors and other parties-in-interest should refer to the disclosure statement, filed contemporaneously with the Plan (the "Disclosure Statement") for a discussion of the Debtor's history, business, assets, results of operations, projections and events leading up to the filing of the Chapter 11 case.

**All holders of Claims against the Debtor or its estate are encouraged to read the Plan, the Disclosure Statement and the related solicitation materials in their entirety before voting to accept or reject the Plan.**

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code (as defined below), Rule 3019 of the Federal Rules of Bankruptcy Procedure, and Article XV. of the Plan, the Debtor expressly reserves the right to amend or modify the Plan upon prior notice to parties in interest and the approval of the Bankruptcy Court, as necessary.

**ARTICLE I.      DEFINITIONS**

As may be used in the Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or Bankruptcy Rules (as each term is defined below), will have the meanings given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

"**Administrative Claim**" shall mean those costs and expenses of administration allowed under section 503(b) or 507(b) of the Bankruptcy Code.

"**Allowed Claim**" shall mean (a) a Claim (defined below) that has been allowed by an order, or (b) with respect to any Claim against either Debtor: (i)(A) proof of which, request for

payment of which, or application for allowance of which, was filed or deemed filed with the Bankruptcy Court on or before the Bar Date for filing proofs of claims or requests for payment for Claims of such type against the Debtor or such date as established by order of the Bankruptcy Court, as applicable; or (B) a Claim that is allowed by agreement of the Debtor and approved by the Bankruptcy Court; and (ii) in each case, a Claim as to which no objection to the allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court. The term "Allowed," when used to modify a reference in this Plan to any Claim or Class of Claims, shall mean a Claim (or any Claim in any such Class) that is so allowed (e.g. an "Allowed Secured Claim") is a Claim that has been allowed to the extent of the value, as determined by the Bankruptcy Court under Section 506(a) of the Bankruptcy Code, of any interest in property of the estate securing such Claim.

**"Bankruptcy Code"** shall mean Title 11 of the United States Code.

**"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the Northern District of Ohio, in which the Debtor's case is pending.

**"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure.

**"Bar Date"** shall mean the date set as a deadline to file a proof of claim.

**"Cash"** shall mean cash, cash equivalents, and other readily marketable securities or instruments.

**"Claim"** shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, against the Debtor, in existence on or as of the date of the Debtor's bankruptcy filing, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured.

**"Confirmation Date"** shall mean the date on which the Confirmation Order is entered.

**"Confirmation Order"** shall mean the order entered by the Bankruptcy Court confirming the Plan, pursuant to Section 1129 of the Bankruptcy Code.

**"Debtor"** shall mean Mount Calvary Pentecostal Church of Youngstown, Ohio as debtor the debtor-in-possession in this chapter 11 case, in accordance with sections 1107 and 1108 of the Bankruptcy Code.

**"Disputed Claim"** shall mean, (a) if no proof of Claim has been filed by the applicable Bar Date or has otherwise been deemed timely filed under applicable law: (i) a Claim that is listed on a Debtor's bankruptcy schedules as other than disputed, contingent or unliquidated, but as to

Page -2-

17-40195-jpg    Doc 63    FILED 12/20/17    ENTERED 12/20/17 15:49:44    Page 2 of 10

which the applicable Debtor or any other party in interest, has filed an objection, and such objection has not been withdrawn or denied by a final order; or (ii) a Claim that is listed on a Debtor's bankruptcy schedules as disputed, contingent or unliquidated; or (b) if a proof of Claim or request for payment of Administrative Expenses has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law: (i) a Claim for which no corresponding Claim is listed on a Debtor's bankruptcy schedules; (ii) a Claim for which a corresponding Claim is listed on a Debtor's bankruptcy schedules as other than disputed, contingent or unliquidated, but the nature or amount of the Claim as asserted in the proof of Claim varies from the nature and amount of such Claim as it is listed on the bankruptcy schedules; (iii) a Claim for which a corresponding Claim is listed on a Debtor's bankruptcy schedules as disputed, contingent or unliquidated; or (iv) a Claim for which an objection has been filed by the applicable Debtor or other party in interest, and such objection has not been withdrawn or denied by a final order.

**"Effective Date"** shall mean the 14th day after the Confirmation Date; provided, however, that in the event of a stay of the Confirmation Order, "Effective Date" shall mean the first business day following the day on which an order vacating or terminating such stay shall have been entered.

**"Final Order"** shall mean an order which (i) any appeal that has been taken is finally determined, resolved or dismissed, or (ii) the time for filing a notice of appeal or petition for certiorari has expired and no notice of appeal or petition for certiorari has been filed.

**"Forbearance Agreement"** shall mean the agreement entered between the Debtor and America's Christian Credit Union with an effective date of July 1, 2017, and which has been approved by the Bankruptcy Court by an Agreed Order entered on December ___, 2017 [Doc. ___](the "**Forbearance Order**"). All references to the "Forbearance Agreement" refer to the Forbearance Agreement as modified by the Forbearance Order. The Forbearance Agreement addresses, amongst other things, the payment to America's Christian Credit Union as the senior secured creditor. Said agreement is Appendix iii to the Debtor's Disclosure Statement.

**"Plan"** shall mean this Plan of Reorganization and any exhibits hereto either in their present form or as they may be altered, amended, or modified from time to time.

**"Priority Claim"** shall mean any pre-petition Claim entitled to a priority in payment under § 507(a)(3), (4), (5), (6), (7) or (8), including all federal, state and local tax claims.

**"Professional"** shall mean a person or entity: (a) employed in this Chapter 11 case pursuant to an order of the Bankruptcy Court under section 327 or 328 of the Bankruptcy Code and to be compensated for services under sections 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for whom compensation and reimbursement has been allowed by a final order under section 503(b) of the Bankruptcy Code.

**"Professional Fee Claim"** shall mean an Administrative Claim for compensation and reimbursement of expenses of a Professional submitted and allowed in accordance with section

328, 330, 331 or 503(b) of the Bankruptcy Code.

***"Pro Rata"*** **or** ***"Pari Passu"*** shall mean with respect to an amount of Cash to be distributed to the holder of an allowed Claim of a particular class on a particular date, the same proportion that the Allowed Claim bears to the aggregate of all Allowed Claims of that particular class on that particular date.

**"Reorganized Debtor"** shall mean LifeLine Partners, Inc., or any successors by merger, consolidation, acquisition or otherwise, on and after the Effective Date.

**"Secured Claim"** shall mean any Claim which is secured by a lien, security interest or other encumbrance which has been properly perfected as required by law with respect to property owned by the Debtor.

**"Unsecured Claim"** shall mean any Claim that (i) is not secured by any property of the Debtor or the Debtor's Bankruptcy Estate, and (ii) is not a Priority Claim.

## ARTICLE II.    CLASSIFICATION AND TREATMENT OF CLAIMS

For purposes of voting and all other Plan Confirmation matters, except as otherwise provided herein, all Claims shall be classified as set forth in this Article II., *et seq*. Any dispute with respect to classification of Claims shall be resolved by the Bankruptcy Court upon motion of the claimant or interest holder affected thereby, upon notice and a hearing.

Under this Plan, Claims and interests are classified as follows:

1. <u>Administrative Claims.</u>                  Unimpaired. Deemed to accept.

2. <u>Secured Claim -</u>                          Impaired. Entitled to vote.
   <u>(America's Christian Credit Union)</u>

3. <u>Priority Tax Claims</u>                     Unimpaired.

4. <u>General Unsecured Claims.</u>               Impaired. Entitled to vote.

5. <u>Unsecured Claim of</u>                      Impaired. Entitled to vote.
   <u>America's Christian Credit Union</u>

## ARTICLE III.    TREATMENT OF CLASSES OF CLAIMS

**Treatment of Classes of Claims Under the Plan**

1. <u>Class 1 – Administrative Claims</u>.  The Debtor estimates the total fees of the professionals and the United States Trustee outstanding, as of the Confirmation Date, will be no more than $15,000.00 which shall be paid in full in Cash by the Reorganized Debtor within five (5) days following the later of the Effective Date or Court approval of fees.

   Class 1 creditors are not impaired.  All holders of Class 1 claims are deemed to have accepted the Plan and will not be solicited to vote on the Plan.

2. <u>Class 2 – Secured Claim (America's Christian Credit Union)</u>.  Payment will be paid as set forth in the Forbearance Agreement which has been approved by the Bankruptcy Court by an Agreed Order entered on December 15, 2017 [Doc. 59](the "Forbearance Order".  All future references to the "Forbearance Agreement" refer to the Forbearance Agreement as modified by the Forbearance Order.  Class 2 claims are impaired and will be solicited to vote on the Plan.

3. <u>Class 3 – Priority Tax Claims</u> .  The Debtor has priority tax claims which shall be paid over sixty (60) months following the Petition Date.  Class 3 claims are unimpaired and will be solicited to vote on the Plan.  Each holder of an Allowed Claim entitled to priority under 11 U.S.C. §507(a)(8), shall receive payment in full of such Allowed Claim paid in regular monthly installments, in cash, of a total value, as of the Effective Date, equal to the allowed amount of such claim to be paid over a period ending no later than 5 years from the Petition Date, pursuant to 11 U.S.C. §1129(a)(9)(C).  Total value shall include, if applicable, simple interest to accrue on any outstanding balance of such Allowed Claim at the rate of interest determined under the applicable non-bankruptcy law pursuant to 11 U.S.C. §511, including but not limited to O.R.C. §§4123.32, 4141.23 and 5703.47 or federal law, as may be applicable.

4. <u>Class 4 – General Unsecured Claims.</u>  General Unsecured Creditors shall include all creditors claiming a lien or security interest except America's Christian Credit Union inasmuch as the value of the Debtor's assets do not provide sufficient security except partially to America's Christian Credit Union subject to the Forbearance Agreement entered between the Debtor and America's Christian Credit Union.  The General Unsecured Claims shall receive a single disbursement of $15,000.00 on a *pari passu* basis within five (5) days following the Effective Date.  Although the payments provide a very small distribution, it is in furtherance of the Debtor's good faith proposal of its Plan of Reorganization.  Class 4 claims are impaired and will be solicited to vote on the Plan.

5. Class 5 – Unsecured Claim of America's Christian Credit Union.  Subject to the terms of the Forbearance Agreement, the unsecured portion of America's Christian Credit Union

as described in the Forbearance Agreement will not receive any distribution under the Plan. Class 5 claim is impaired and will be solicited to vote on the Plan.

**ARTICLE IV.      BANKRUPTCY CLAIMS**

To the best of Debtor's knowledge, information and belief, there are no bankruptcy claims or causes of action against any entity, individual or insider that arose before or after the commencement date including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under Sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code. Hence, the Debtor does not intend to pursue any such cause of action.

**ARTICLE V.      THE PLAN**

The estimated aggregate totals for each Class of Claims:

1. <u>Administrative Claim.</u>                                     $15,000.00

2. <u>Secured Claim (America's Christian Credit Union).</u>        $1,040,000.00

3. <u>Priority Tax Claims and other Tax Claims.</u>                $280,000.00

4. <u>General Unsecured Claims.</u>                                $678,452.19

5. <u>Unsecured Claim of America's Christian Credit Union.</u>     $1,758,224.15

1. The Effective Date of the Plan shall be fourteen (14) days subsequent to the Confirmation Order.

2. Disbursements shall be made to Class 2, America's Christian Credit Union on its Allowed Secured Claim in accordance with the Forbearance Agreement.

3. Except as otherwise provided in the Forbearance Agreement, America's Christian Credit Union will retain its interest in all mortgages, liens, or other security interests against the property of this estate..

4. The Confirmation Order shall, on the Effective Date, operate as an injunction against any act against the Debtor, its estate and the assets of the Debtor to initiate, prosecute, enforce, liquidate, collect or otherwise assert any claim against the Debtor, its estate and/or the assets of the Debtor, except as provided in this Plan. Any act taken in violation of this provision shall be null and void. On and after the Confirmation Date, the provisions of the

Plan shall be binding upon the Debtor, the Reorganized Debtor, the estate, all holders of claims, all holders of interests, all other parties in interest in this Chapter 11 case, and their respective successors and assigns, whether or not such entities are impaired and whether or not such entities have accepted the Plan. Notwithstanding anything in the Confirmation Order, the Forbearance Agreement shall control as between the Debtor and America's Christian Credit Union.

## ARTICLE VI. IMPLEMENTATION OF THE PLAN

Distributions shall be made by the members of the financial section of the Board of Directors for the Debtor. The Debtor's receipts are from parishioner tithing and offerings. The Debtor anticipates a slight increase in receipts over the term of the Plan.

## ARTICLE VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

To the extent that any executory contract and/or unexpired lease has not been addressed or otherwise assumed as part of this Plan, it is deemed rejected.

## ARTICLE VIII. PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

1. <u>Objections to and Estimation of Claims.</u> The Debtor or Reorganized Debtor may object to the allowance of Claims with respect to which it disputes liability in whole or in part. All objections shall be litigated to a Final Order, provided however, that the Debtor or Reorganized Debtor may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any objections to Claims. In addition, the Debtor or Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim. Unless ordered otherwise by the Bankruptcy Court, the Debtor or Reorganized Debtor will file and serve any objections to Claims as soon as practicable, but in no event later than February 28, 2018.

2. <u>Payments and Distributions on Disputed Claims.</u> No partial payments and no partial distributions shall be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. As soon as practicable after a disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim shall receive all payments and distributions to which such holder is then entitled under the Plan.

**ARTICLE IX.**     **PRESERVATION OF LITIGATION CLAIMS**

The Debtor does not have any litigation claims pending.

**ARTICLE X.**     **DISCHARGE**

Confirmation of the Plan shall discharge the Debtor from any debt that arose before the Confirmation Date and any debt of a kind specified as capable of being discharged under the Bankruptcy Code, whether or not:

(a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code;

(b) a claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or

(c) the holder of a Claim based upon such debt has accepted the Plan.

**Default -** If the Reorganized Debtor defaults in payments to creditors under the Plan at anytime before the issuance of a final decree, along with any other remedies available to creditors, the creditors of the Debtor shall have the right to request conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code, or request dismissal of this proceeding.

**ARTICLE XI.**     **TREATMENT OF AMERICA'S CHRISTIAN CREDIT UNION**

Notwithstanding anything contained in the Plan or the Confirmation Order, the debts owed by the Debtor to America's Christian Credit Union shall not be discharged and shall be controlled completely by the terms of the Forbearance Agreement.

**ARTICLE XII.**     **MEANS OF EXECUTION OF PLAN**

The key employees of the Reorganized Debtor shall remain in place.  Pursuant to Bankruptcy Rule 3020, the financial section of the board of directors of the Reorganized Debtor and will act as the disbursing agent under this Plan.  Said board members shall not receive separate compensation for serving as disbursing agent.

# ARTICLE XIII. COMPLIANCE WITH APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE

Section 1129(a)(1) of the Bankruptcy Code requires that the Plan comply with the applicable provisions of the Bankruptcy Code. The Debtor has considered each of these issues in the development of the Plan and believes that the Plan complies with all provisions of the Bankruptcy Code, including the "new value exception" to the "absolute priority rule" set forth in Section 1129(b)(2)(B)(ii). Inasmuch as this is a nonprofit entity, the New Value Exception has been met under the proposed plan.

# ARTICLE XIV. POST-CONFIRMATION FEES AND REPORTS

Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall also file with the Court and serve on the U.S. Trustee, a post-confirmation report for each quarter (or portion thereof), until a final decree is entered. A final decree will be entered as soon as practicable after distributions have commenced under this Plan. Notice of application for a final decree need be given only to those holders of Claims and other parties in interest that have specifically requested such notice.

# ARTICLE XV. RETENTION OF JURISDICTION OF THE COURT

Whether or not a Final Order closing the case has been entered pursuant to Section 350 of the Bankruptcy Code, the Court shall retain exclusive jurisdiction for the following purposes:

1. To determine any and all objections to the allowance of Claims and interests;

2. To determine any and all applications for allowance of compensation and reimbursement of expenses;

3. To determine any and all controversies and disputes arising under or in connection with the Plan and such other matters as may be provided for in the Confirmation Order;

4. To determine any and all pending applications, adversary proceedings and contested and litigated matters;

5. To determine any and all applications for modification of obligations under the Plan; and

6. To determine any other matter not inconsistent with Title 11 of the United States Code.

# ARTICLE XVI. MODIFICATION OF THE PLAN

The Debtor may propose amendments or modifications of the Plan to the Bankruptcy Court

at any time prior to the confirmation of this Plan upon prior notice to parties in interest. After the Confirmation Date, the Debtor may, with prior approval of the Bankruptcy Court, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purpose of the Plan and so long as such modification does not adversely affect the interests of any holder of any Allowed Claim.

**MOUNT CALVARY PENTECOSTAL CHURCH OF YOUNGSTOWN, OHIO,** the
Debtor and Debtor-in-Possession

Dated: October 30, 2017          By: /s/ Derrick Jackson
                                 Derrick Jackson, its Authorized Board Member


Respectfully submitted,

**SUHAR & MACEJKO, LLC**

By: /s/ Andrew W. Suhar
Andrew W. Suhar Esq., Reg. No. 0058419
Melissa Macejko, Esq., Reg. No. 0070974
29 East Front Street, 2nd Floor
P.O. Box 1497
Youngstown, OH 44501-1497
Telephone: (330) 744-9007
Facsimile: (330) 744-5857
Email: asuhar@suharlaw.com

Counsel for Mount Calvary Pentecostal
Church of Youngstown, Ohio,
Debtor and Debtor-in-Possession